UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GENE FRANCIS STUART,<br><br>                    Petitioner,<br><br>    v.<br><br>GREG FISHER, Warden of the Idaho Maximum Security Institution, Department of Correction, State of Idaho,<br><br>                    Respondent. | Case No. 1:02-cv-00020-BLW<br><br>**MEMORANDUM DECISION AND ORDER**<br><br><br>**CAPITAL CASE** |

## INTRODUCTION

Currently pending before the Court in this capital habeas matter is Respondent's Motion to Dismiss Procedurally Defaulted Claims. (Dkt. 92.) The Court finds that the parties have adequately stated the facts and legal arguments in their briefs and that the decisional process would not be significantly aided by oral argument. In the interests of avoiding further delay, the Court will decide this matter on the written motion, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1.

For the reasons set forth below, the Court concludes that the following claims in the Amended Petition were either properly exhausted in the state courts, in whole or in part, or that any procedural default will be excused: Claim 2A (as limited herein), 5, 6, 7 (limited), 8 (final ruling is reserved), 10, 11, 13 (limited), 14-21, 22 (limited), 24A, 24C,

**MEMORANDUM DECISION AND ORDER - 1**

and 27. The Court concludes that the following claims are procedurally defaulted and will be dismissed on that basis unless Petitioner can show cause and prejudice: Claim 1, 2B, 2C, 2D, 2E, 3, 4, 9, 12, 23, 24B, 24D, 25, 26, 28, and 29. Because Petitioner contends that his appointed counsel's alleged ineffectiveness in state court is the cause for the default of many of these claims, and because this Court finds that the ineffective assistance of counsel claims that Petitioner has included as an independent basis for relief (Claim 27) do not rest on an adequate state procedural ground that would otherwise bar federal review, the Court will await further briefing on Claim 27 before issuing a final order dismissing any procedurally defaulted claims.

Accordingly, Respondent's Motion will be conditionally granted in part and denied in part.

## BACKGROUND

After a jury trial in 1982, Gene Francis Stuart was convicted of first-degree murder by torture for beating to death three-year-old Robert Miller, a child who had been entrusted to his care. The trial court sentenced him to death, and the Idaho Supreme Court affirmed the judgment on direct appeal. *State v. Stuart*, 715 P.2d 833 (Idaho 1986), *affirmed after rehearing* 715 P.2d at 897.

In 1986, the attorney who had represented Stuart at trial and on direct appeal, Robert Kinney, filed a post-conviction petition on Stuart's behalf. Although Kinney raised numerous claims in the petition, he did not allege that he had been constitutionally ineffective at trial, sentencing, or on direct appeal.  (*Id.*) The district court dismissed the

**MEMORANDUM DECISION AND ORDER - 2**

petition without an evidentiary hearing, and the Idaho Supreme Court affirmed. *Stuart v. State*, 801 P.2d 1216 (Idaho 1990).

While the initial post-conviction appeal was still pending, Kinney uncovered evidence that personnel in the Clearwater County Sheriff's Office may have secretly monitored or recorded conversations between Stuart and his attorneys while he was awaiting trial in the county jail. (State's Lodging E-1, pp. 27-46.) Based on this information, Kinney filed a second petition for post-conviction relief in 1988, claiming that the State had violated Stuart's constitutional rights to the assistance of counsel and to due process of law. (*Id*.) This core claim would be litigated in the state courts for the next 13 years.

Initially, the district court dismissed the second petition summarily. (State's Lodging E-1, pp. 96-103, 176-77.) The Idaho Supreme Court reversed that decision and remanded for further proceedings. *Stuart v. State*, 801 P.2d 1283, 1285-86 (Idaho 1990). On remand, the district court held an evidentiary hearing, after which it determined that Stuart had failed to carry his burden to prove that any of his conversations with his attorneys had, in fact, been monitored or recorded by law enforcement officials. (State's Lodging G-2, pp. 569.)

The Idaho Supreme Court reversed the district court and remanded the case a second time. *Stuart v. State*, 907 P.2d 783 (Idaho 1995). It doing so, it held that the lower court had erred in not giving Stuart the benefit of a favorable inference from the destruction of certain evidence – jail telephone logs – that had been in the State's

**MEMORANDUM DECISION AND ORDER - 3**

possession. *Id.* at 793-94.

To this point, Robert Kinney had represented Stuart in all of his state court proceedings, but in 1995 he accepted an offer of employment out of state. (State's Lodging K-1, pp. 40-44.) Kinney was allowed to withdraw, and the district court appointed new counsel, Scott Chapman, who represented Stuart in the second remand proceeding related to the monitoring of Stuart's attorney/client communications. (*Id.*)

After holding another evidentiary hearing, the district court again denied relief. (State's Lodging K-2, pp. 367-95.) While the court assumed that Stuart's conversations had been monitored, it concluded that the State had carried its burden to prove that all material evidence presented at the trial was discovered independently of any violation of Stuart's constitutional rights. (*Id.* at 383-95.) On December 4, 2001, the Idaho Supreme Court affirmed, putting this issue to rest in the state courts. *Stuart v. State*, 36 P.3d 1278 (Idaho 2001).

During the mid-1990s, Stuart was also pursuing separate collateral relief in the form of a motion for relief from judgment. There, he argued that a new Idaho Supreme Court decision, *State v. Tribe*, 852 P.2d 87 (1993), which had reversed a trial court's failure to give a lesser included offense instruction in a murder by torture case, should be applied to his case. (State's Lodging I-1, pp. 1-11.) The motion was unsuccessful in the district court, and the Idaho Supreme Court affirmed the denial of relief, concluding that Stuart was not entitled to retroactive application of *Tribe*. *See Stuart v. State*, 914 P.2d 933 (Idaho 1996).

**MEMORANDUM DECISION AND ORDER - 4**

Stuart finally arrived in federal court in January of 2002 when he filed a Statement of Issues. (Dkt. 1.) This Court appointed new counsel and issued a stay of execution, and Stuart filed a Petition for Writ of Habeas Corpus on June 24, 2002. (Dkts. 5, 17.) In his Petition, he raised claims of ineffective assistance of counsel for the first time in any court, and he asked the Court to hold the Petition in abeyance while he attempted to exhaust these and other new claims in the state courts. (Dkt. 26.) Respondent did not object, and the Court granted the request. (Dkts. 31, 32.)

Stuart returned to state court and filed a successive petition for post-conviction relief, raising claims of ineffective assistance of counsel, prosecutorial misconduct, and an Eighth Amendment claim based on the length of time he had been confined. (State's Lodging O-1, pp. 1-40.) In 2007, the district court dismissed the petition as untimely under the special post-conviction rules for capital cases set out in Idaho Code § 19-2719. The Idaho Supreme Court dismissed the appeal from the district court's decision after concluding that all claims were procedurally barred by the statute. *Stuart v. State*, 232 P.3d 813, 820 (Idaho 2010).

Also pending in state court at the same time was yet another successive collateral action containing multiple claims based on *Ring v. Arizona*, 536 U.S. 584 (2002). The district court's dismissal of that action was affirmed by the Idaho Supreme Court in *Rhoades, et al. v. State*, 233 P.3d 61 (Idaho 2010).

In 2011, this Court lifted the stay of the federal habeas case and permitted Stuart to file an Amended Petition, in which he has raised 29 claims for relief. (Dkts. 69, 78.)

**MEMORANDUM DECISION AND ORDER - 5**

Respondent has responded to the Amended Petition with the pending Motion to Dismiss Procedurally Defaulted Claims, arguing that all claims, except aspects of Claims 2 and 22, were not properly exhausted in the Idaho state courts must now be dismissed as procedurally defaulted. (Dkt. 92, p. 2.)

Petitioner has submitted a Brief in Opposition, and Respondent has filed a Reply. (Dkts. 100, 118.) The matter is fully briefed and the Court is now prepared to issue its ruling.

## LEGAL STANDARDS GOVERNING EXHAUSTION
## AND PROCEDURAL DEFAULT

A habeas petitioner must exhaust all potential remedies in state court before a federal court can grant relief on a constitutional claim. 28 U.S.C. § 2254(b)(1)(A). This requirement is technically satisfied when no state court remedies remain available, but the federal court must also ask whether the petitioner exhausted his potential remedies *properly*. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). To do so, he must have "fairly presented" each constitutional claim at all levels of the state's appellate review process, giving the state courts a full and fair opportunity to correct the alleged error before the federal court intervenes. *Boerckel*, 526 U.S. at 848; *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

When a petitioner has not fairly presented a habeas claim to the state courts, and it is now clear that the claim would be barred by a state procedural rule, the claim has been procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161 (1996). Similarly, a

**MEMORANDUM DECISION AND ORDER - 6**

constitutional claim is also defaulted when the state court expressly denied or dismissed it after invoking a state procedural bar. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). If the state's procedural rule is both independent of federal law and adequate to support the state court's judgment, the defaulted claim will not be considered in a habeas proceeding, unless the petitioner can establish cause for his default and actual prejudice, or he can show that he is probably innocent. *Id.* at 750.

Only those state procedural rules that are "independent and adequate," however, will prevent federal habeas review on the merits. To be independent, the rule must not be interwoven or intertwined with federal law. *La Crosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001). To be adequate, the rule must be "clear, consistently applied, and well-established" at the time of the petitioner's purported default. *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994).

Procedural default is an affirmative defense, and the initial burden rests with the state's representative to plead the existence of a state procedural bar. *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003). The burden then shifts to the petitioner to call the adequacy of the bar into question. *Id*. If the petitioner asserts factual allegations that tend to demonstrate that the rule is inadequate, the state will bear the ultimate burden of proving "that the state procedural rule has been regularly and consistently applied in [state] habeas actions." *Id*. at 586.

In a situation that is apparently unique to Idaho, certain constitutional sentencing errors in capital cases will be heard in a federal habeas proceeding regardless whether the

**MEMORANDUM DECISION AND ORDER - 7**

petitioner fairly presented them to the Idaho Supreme Court. A panel of the Ninth Circuit has determined that the Idaho Supreme Court considers, either implicitly or explicitly, some sentencing errors as part of its automatic statutory review of death sentences under Idaho Code § 19-2827(c)(1). *Beam v. Paskett*, 3 F.3d 1301, 1306 (9th Cir. 1993) *partially overruled on other grounds by Lambright v. Stewart,* 191 F.3d 1181, 1187 (9th Cir. 1999).

The generosity that *Beam* bestows on capital habeas petitioners is not boundless, and the scope of habeas review will be no broader than the Idaho Supreme Court's mandatory review, which is limited to reviewing the imposition of the death sentence in the case before the state appellate court. *See Beam*, 3 F.3d at 1306. Claims that make a broad-based constitutional challenge to Idaho's death penalty process, are based on matters outside of the record before the Idaho Supreme Court, or allege that the Idaho Supreme Court itself erred during its direct or post-conviction appellate review, are not encompassed by that automatic review.

With these standards in mind, the Court now turns to the claims that Respondent asserts are defaulted in this case.

## DISCUSSION

Claim 1

In his first claim, Stuart contends that the State failed to provide him with counsel "for ten days or more after his arrest," violating his rights under the Sixth, Eight, and Fourteenth Amendments. (Dkt. 78, pp. 3-4.) He asserts that his statements to law

**MEMORANDUM DECISION AND ORDER - 8**

enforcement officers during that time were obtained unlawfully. (*Id*.) Respondent counters that Stuart has never raised this claim in the Idaho Supreme Court and that the time to do so has long since passed. (Dkt. 92-1, p. 10.) Stuart appears to concede that he failed to raise the claim expressly, but he argues that it is a "*Beam* claim" that the Idaho Supreme Court implicitly reviewed, at least to the extent that the claim has a "sentencing component." (Dkt. 105, p. 22.)

If there is a sentencing component to this claim, Stuart does not explain what it is beyond a conclusory assertion that he was deprived of a "reliable sentence." (Dkt. 78, p. 3.) But if the Court were to assume that Stuart means that the Idaho Supreme Court implicitly reviewed whether the sentencing court's consideration of the allegedly unlawfully obtained evidence rendered his death sentence "unreliable," this Court would find such a theory to be inconsistent with the *Beam* rationale. While the Court has turned aside the State's repeated argument that the operative language in *Beam* was either dicta or has since been overruled, it will not extend *Beam* beyond its scope, which "is limited to constitutional errors that are alleged to have occurred during the imposition of the death sentence in a particular case." *Hoffman v. Arave*, 937 F. Supp. 1152, 1159 (D. Idaho 1997) *rev'd on other grounds*, 236 F.3d 523 (9th Cir. 2001). To find, as Stuart suggests, that any error in the admission of evidence at a jury trial in a capital case will necessarily have an Eighth Amendment sentencing component would expand *Beam* beyond recognition. The Court declines Stuart's invitation to follow that path.

Stuart attaches an "unreliable sentencing" tag to many, if not most of his guilt-

**MEMORANDUM DECISION AND ORDER - 9**

phase claims in the Amended Petition, and the Court will not re-tread this same ground for each claim. It is sufficient to say that unless a guilt-phase claim was fairly presented to the Idaho Supreme Court, *Beam* will not save it from procedural default.

Accordingly, Claim 1 is procedurally defaulted in its entirety.

Claim 2

For his second claim, Stuart alleges, in six sub-parts, various instances of prosecutorial misconduct that he contends deprived him of his constitutional rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.[1]

Subclaim A

In Claim 2A, Stuart asserts that the prosecution used incriminating information that it obtained unlawfully from secret monitoring and recording of his pre-trial conversations with his attorneys. (Dkt. 78, p. 6.) He contends that the prosecution learned the identities and locations of his ex-wives and girlfriends who would eventually provide incriminating testimony at his trial about how he had abused them. (*Id*.)

This claim was fairly presented to the Idaho Supreme Court and is now properly exhausted, but only to the extent that Stuart alleges that the State's actions violated his right to the assistance of counsel under the Sixth Amendment and his right to due process of law under the Fourteenth Amendment. (State's Lodging F-1, pp. 22-55.) Any legal theory that relies on the Fifth Amendment's clause against compelled self-incrimination

---

[1] Stuart's framing of all of these subclaims under the rubric of prosecutorial misconduct is curious, given that the many of his allegations in Claim 2 are straightforward constitutional claims that are based on legal theories other than prosecutorial misconduct.

**MEMORANDUM DECISION AND ORDER - 10**

was not fairly presented and is now defaulted. Likewise, for the reasons given above, the Court does not find that an "unreliable sentencing" claim was implicitly considered as part of the Idaho Supreme Court's automatic review responsibilities per *Beam*.[2]

### Subclaim B

Next, Stuart alleges that police officers failed to provide him with proper *Miranda* warnings because, though they told him that he was entitled to a lawyer, they did not inform him that a lawyer would be provided for him if he could not afford one. He also contends that officers elicited incriminating statements from him during interview sessions in violation of his right to counsel, and that his statements were used during his criminal trial in violation of his Fifth, Sixth, and Fourteenth Amendment rights. Stuart has never raised these substantive issues in the Idaho Supreme Court, and no part of this subclaim is saved by *Beam*. As a result, the claim is procedurally defaulted.

### Subclaim C

Stuart contends that information allegedly obtained from his private address book by the mother of the deceased victim, Kathy Miller, "violated his reasonable expectation of privacy and, therefore, his Fourth and Fourteenth Amendment right against unreasonable search and seizure and due process." (Dkt. 78, pp. 14-15.) This claim has

---

[2] The Court does not agree with Respondent that Stuart's allegation that the Idaho Supreme Court erred in applying the "independent origin, inevitable discovery, and attenuated basis exceptions" to reject his constitutional claim raises a separate claim for relief that must have been independently exhausted. Presumably, this is part of Stuart's argument as to why the Idaho Supreme Court's adjudication of his constitutional claim was contrary to or involved an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d).

**MEMORANDUM DECISION AND ORDER - 11**

never been presented to the Idaho Supreme Court and is procedurally defaulted.

<u>Subclaims D, E, and F</u>

In these subclaims, Stuart asserts that the trial prosecutor vouched for the credibility of witnesses and made other improper statements during his closing argument (Claim 2D), tampered with testifying witnesses (Claim 2E), and knowingly withheld mitigation evidence from Stuart and the trial court (Claim 2F).

While Claim 2D has never been presented to the state courts, Stuart attempted to raise the material allegations in Claims 2E and 2F in his 2002 successive post-conviction petition. In 2007, the state district court dismissed those claims as untimely under Idaho Code § 19-2719, concluding that Stuart reasonably could have known of the facts in time to raise them within the statutory deadlines. *See* State's Lodging O-4, pp. 653-54.

Idaho Code § 19-2719, enacted in 1984, sets forth special post-conviction procedures applicable only to capital cases. It requires a defendant under a sentence of death to raise any "factual or legal challenge to the sentence or conviction that is known or reasonably should be known" within 42 days of the filing of the judgment imposing the death sentence. Idaho Code § 19-2719(3). If the defendant does not advance a post-conviction claim that could have reasonably known by the 42-day deadline, he is deemed to have waived it. Idaho Code § 19-2719(5). There is a limited exception to waiver for any claim that was not reasonably known within 42 days of judgment, but the defendant must raise such a claim within a "reasonable time" after it is known or reasonably could have been known. *See, e.g.*, *Paradis v. State*, 912 P.2d 110, 114 (1996).

**MEMORANDUM DECISION AND ORDER - 12**

Invoking these provisions, the state district court concluded that the facts supporting Stuart's claims of prosecutorial misconduct could have been known at the time that he filed "his direct appeal and/or at the time he filed his petition first post-conviction relief." (State's Lodging O-4, pp. 653-54.) Because he had not raised those claims until many years later, they were waived by operation of Idaho Code § 19-2719(3),(5).

The Idaho Supreme Court affirmed the district court, but it used slightly different reasoning. *Stuart v. State*, 232 P.3d 813 (Idaho 2010). It determined that Stuart had failed to meet a "heightened pleading requirement" placed on successive post-conviction petitioners to prove the limited exception to waiver for previously unknown claims in Idaho Code § 19-2719(5). *Stuart,* 232 P.3d at 818-20. In particular, the court determined that Stuart had failed to allege facts in his petition showing a prima facie case that (1) the newly raised claims could not have been reasonably known within the 42-day deadline and that (2) the new claims had been asserted within a "reasonable time" of when they could have been known. *Id.* at 818-20 (citing *Pizzuto v. State*, 903 P.2d 58, 60 (Idaho 1995) and *Paz v. State*, 852 P.2d 1355, 1357 (Idaho 1993)).

Respondent relies on the Idaho Supreme Court's invocation of Idaho Code § 19-2719 to argue that the claims are procedurally defaulted. In a habeas case, once the State has pled a state procedural bar, the burden shifts to the petitioner to place the adequacy of the bar in issue. *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). Here, Stuart does not challenge the adequacy of Idaho Code § 19-2719 to the extent that it was applied to dismiss his claims of prosecutorial misconduct. (Dkt. 105.) Respondent has carried his

**MEMORANDUM DECISION AND ORDER - 13**

initial burden, and this Court has no reason to question whether the Idaho Supreme Court's use of Idaho Code § 19-2719 to default these claims was adequate to prevent federal habeas review.[3]

Moreover, contrary to Stuart's argument, the subclaims are not sentencing claims that are saved by *Beam*.

Claim 3

In his third claim, Stuart contends that the trial court failed to provide adequate resources for his defense to investigate the witnesses who testified about his prior bad acts, which violated his rights under the Sixth, Eighth, and Fourteenth Amendments. He did not fairly present this claim to the Idaho Supreme Court, and it is not a *Beam* claim that was implicitly reviewed.

Claim 4

In this claim, Stuart challenges the trial court's admission of trial testimony from his ex-wives and girlfriends about abuse that they had suffered at his hands, which was admitted solely for the "purpose of attempting to show motive or intent on the part of [Stuart] to torture the deceased." (State's Lodging A-6, p. 488.) He contends that the admission of the prior bad acts evidence violated his right to a fair trial under the Fourteenth Amendment and his right to a "reliable sentence" under the Eighth Amendment. (Dkt. 78, p. 22.)

---

[3] Stuart does challenge the adequacy of the Idaho Supreme Court's use of Idaho Code § 19-2719 to bar his claims of ineffective assistance of counsel, which will be discussed later in this Memorandum Decision.

**MEMORANDUM DECISION AND ORDER - 14**

Although Stuart raised a claim during the direct appeal challenging the admission of this evidence, he relied solely on state evidentiary rules and case law interpreting those rules. (State's Lodging B-1, pp. 44-51.) His failure to present the same federal grounds that he now includes in his Amended Petition means that the federal claim was not properly exhausted and is procedurally defaulted.

Claim 5

Stuart alleges that he was "tried by biased jurors in violation of his right to an impartial jury trial as guaranteed by the Sixth and Fourteenth Amendments," and, again, that this constitutional error rendered his death sentence "unreliable." (Dkt. 78, p. 23.) On direct appeal, he challenged the lower court's decision to change venue to a nearby county. (State's Lodging B-1, pp. 52-53.) In framing the issue, he alleged that the "trial court prevented appellant from obtaining a fair and impartial trial by jury of his peers as mandated by the Constitutions of the United States and of the State of Idaho." (State's Lodging B-1, pp. 52-53.) In the body of his argument he cited *Irwin v. Dowd*, 366 U.S. 717 (1961), a case that examined the impact of inflammatory pre-trial publicity on a defendant's right to a impartial jury under the Sixth Amendment. (*Id*. at 53.) This was sufficient to alert the Idaho Supreme Court that he was claiming a violation of his constitutional right to an unbiased jury because of the supposedly extensive media coverage, exhausting Claim 5 on that ground, but the unreliable sentencing claim is not properly exhausted.

**MEMORANDUM DECISION AND ORDER - 15**

<u>Claim 6</u>

Stuart next asserts that the trial court's jury instructions – particularly Jury Instructions 17 and 18 – created a reasonable likelihood that he was convicted without a finding of proof beyond a reasonable doubt on the specific intent element of first degree murder by torture. (Dkt. 78, p. 24.) Respondent appears to concede that a similar due process issue was put before to the Idaho Supreme Court during the direct appeal, but he contends that Stuart did not assert the issue in a procedurally proper manner under state law. Stuart counters that the claim was fairly presented to the Idaho Supreme Court.

To resolve this dispute, it is necessary to trace the circuitous path that the issue took in the state courts. In his opening brief on direct appeal, Stuart argued that the evidence was insufficient to support his conviction of first degree murder and that the trial court had erred in not instructing the jury to consider the lesser included offense of second degree murder by torture. (State's Lodging B-1, pp. 37-44, 84.) To support both of these arguments, he discussed the different levels of intent that distinguish first degree murder from second degree murder under a torture theory, but he did not challenge the phrasing of the instructions that had actually been given to the jury. Instead, the possibility of a constitutional infirmity in the trial court's instructions was first raised by Justice Bistline in his dissent from the original Idaho Supreme Court opinion. *See Stuart*, 715 P.2d at 856-58, 865-66 (Bistline, J., dissenting).

Stuart picked up on Justice Bistline's concerns and filed a petition for rehearing in which he referred to the dissent and asserted that Jury Instruction 18 "relieved the jury

**MEMORANDUM DECISION AND ORDER - 16**

from any responsibility to find proof of intent to cause suffering." (State's Lodging B-5, p. 3.) The Idaho Supreme Court granted Stuart's petition "as to the single issue of Jury Instruction Number 18 concerning proof of intent," and it set a briefing schedule. (State's Lodging B-8.)

After the petition was granted, but before oral argument, the Idaho Solicitor General asserted in his brief that Stuart was raising an entirely new issue that should not be considered within the procedural posture of a petition for rehearing. (State's Lodging B-6.) This argument was discussed during the oral argument, *see Stuart*, 715 P.2d at 900-903 (Bistline, J., dissenting) (quoting a colloquy from the oral argument), but the Idaho Supreme Court's opinion on rehearing states only that "[t]he Court has reviewed the record and considered the arguments presented by counsel, and continues to adhere to the views expressed and the conclusion reached in the earlier opinion." *Id*. at 897. Justice Bistline dissented again, concluding, in relevant part, that "[u]nder either state or federal notions of constitutional due process, the instructions given in this case, as discussed earlier, deprived Stuart of a fair trial." *Id*. at 904.

Based on this series of events, Respondent contends that the Idaho Supreme Court accepted the Solicitor General's procedural argument that the claim was barred from review on the merits. The problem for Respondent is that the Idaho Supreme Court never gave a clear indication that it agreed with that argument.

Generally, the doctrine of procedural default "does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a

**MEMORANDUM DECISION AND ORDER - 17**

judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 262-63 (1989). In ambiguous cases, a presumption will arise that the state court reached the merits of the federal claim only "where a federal court has good reason to question whether there is an independent and adequate state ground for the decision." *Coleman v. Thompson*, 501 U.S. 722, 739 (1991) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983)).

Here, the Idaho Supreme Court did not "clearly and expressly" state that its judgment was based on a state appellate rule or practice that prohibited losing parties from raising new issues in a petition for rehearing. *See Harris*, 489 U.S. at 262-63. At best, the Idaho Supreme Court's opinion is ambiguous, but this Court is not persuaded by Respondent's argument that the record provides a "good reason" to believe that the state court's judgment rested on a procedural ground rather than the merits. All indications point in the other direction. Had the Idaho Supreme Court *denied* the petition for rehearing without giving an explanation, then Respondent's argument would have more force, but the Idaho Supreme Court *granted* Stuart's petition and chose to rehear the case on "the single issue of Jury Instruction Number 18 concerning proof of intent." (State's Lodging B-8.) It then issued a short opinion in which it declared only that it had "reviewed the record and considered the arguments presented by counsel"– suggesting that it took into consideration arguments on the merits within the context of the record – but continued "to adhere to the views expressed and the conclusion reached in the earlier opinion." *Stuart*, 715 P.2d at 897. A fair reading of this language is that the court was not

**MEMORANDUM DECISION AND ORDER - 18**

convinced that the claim had sufficient merit to alter its disposition of the case. If the court had been persuaded by the Solicitor General's procedural argument, it would have been a simple matter for it to vacate its order granting the petition for rehearing as improvidently granted, or to indicate in its opinion that the issue was not properly before it and would not be considered. Indeed, in all of the cases that Respondent has cited in his brief the Idaho appellate courts took the latter action. (Dkt. 92-1, pp. 21-22.)

The Court therefore concludes that Respondent has not carried his ultimate burden to establish that the due process portion of this claim rests on an independent and adequate state procedural ground. That portion of Claim 6 will not be dismissed as procedurally defaulted. As with the other claims, however, Stuart never raised an reliable sentencing argument under the Eighth Amendment in the state courts, and that aspect of the claim is procedurally defaulted.

Claim 7

Stuart asserts that the evidence was insufficient to convict him beyond a reasonable doubt. He raised a sufficiency of the evidence issue in the Idaho Supreme Court during the direct appeal, citing a state case that framed the issue as one arising under the Due Process Clause of the Fourteenth Amendment. (State's Lodging B-1, p. 42) (citing *State v. Erwin*, 572 P.2d 170 (Idaho 1977)).

Respondent contends that Stuart is now attempting to fundamentally alter the claim because he alleges in his Amended Petition that the evidence was constitutionally insufficient to support his conviction only after "the irrelevant evidence is removed from

**MEMORANDUM DECISION AND ORDER - 19**

consideration," by which he presumably means the prior bad acts evidence that was admitted at trial. (Dkt. 78, p. 28.) It is unclear whether Stuart intends to limit the claim solely to this legal theory, because he also alleges much more generally that the "jury was allowed to convict on the basis of insufficient evidence of murder by torture," which "violated [his] right to due process as guaranteed by the Fourteenth Amendment and to a reliable sentence as guaranteed by the Eighth and Fourteenth Amendments. *Jackson v. Virginia* [, 443 U.S. 307 (1979).]" (*Id.*)

The Court will give Stuart the benefit of the doubt and conclude that the Fourteenth Amendment due process claim is properly exhausted, but only insofar as it is based on a review of all of the evidence presented at the criminal trial under the *Jackson* standard. Any legal theory that turns on the exclusion of supposedly irrelevant evidence from the analysis fundamentally changes the nature of the issue that Stuart actually presented to the Idaho Supreme Court and would be procedurally defaulted. Regardless, such a novel theory has no basis in law. *See*, *e.g.*, *McDaniel v. Brown*, 130 S.Ct. 665, 671-72 (2010) (holding that when assessing whether the evidence was sufficient to convict, a reviewing court must consider all of the evidence admitted by the trial court, regardless whether it was admitted erroneously). The reliable sentencing component of this claim is procedurally defaulted.

Claim 8

In Claim 8, Stuart asserts that the "trial court committed constitutional error by not instructing on the lesser included offense of second degree murder by torture." (Dkt. 78,

p. 29.) During the direct appeal, Stuart raised an issue related to the trial court's failure to instruct on second degree murder by torture, *see* State's Lodging B-1, pp. 83-86, but the Idaho Supreme Court declined to address the merits after concluding that Stuart's trial counsel had invited any error by not requesting the instruction. *Stuart*, 715 P.2d at 839-40.

Eleven years after Stuart was convicted, the Idaho Supreme Court held in a different case that a trial court had erred in not instructing the jury to consider second degree murder by torture as a lesser included offense of first degree murder by torture. *State v. Tribe*, 852 P.2d 87, 91-92 (1993). Relying on *Tribe*, Stuart filed a motion for relief from judgment, which was dismissed by the district court. The Idaho Supreme court affirmed the lower court's decision after concluding that *Tribe* did not retroactively apply to Stuart's case. *Stuart*, 914 P.2d at 934.

Respondent argues that while "an issue regarding included offenses was raised on direct appeal," the claim is shielded from federal review because the Idaho Supreme Court's invoked a state rule – the "invited error doctrine" – to reject it. (Dkt. 92-1, p. 23.) Respondent further contends that the Idaho Supreme Court's dismissal of the claim a second time, on the ground of non-retroactivity, is also an independent and adequate state procedural bar. (*Id.* at 24.) Stuart responds that Idaho's invited error doctrine was not firmly established or regularly followed when the claim was allegedly defaulted, but he does not address Respondent's non-retroactivity argument. (Dkt. 105, p. 11.)

Respondent's argument raises several complex issues that are not fully addressed

**MEMORANDUM DECISION AND ORDER - 21**

in the parties' current briefing, and the Court chooses to reserve its ruling on the procedural default question until after Respondent has filed an answer. For the parties' benefit, the Court will set out its initial considerations here.

First, although Respondent admits that Stuart raised "an issue regarding included offenses" on direct appeal, it is not clear whether Respondent concedes that the issue was framed as a *federal constitutional* one. A review of Stuart's state court briefing leaves the Court uncertain, and arguments can be made either way. (*See* State's Lodging B-1.)

But if Respondent does concede that a federal claim was raised on direct appeal, then this Court doubts that the manner in which the Idaho Supreme Court interpreted and applied the "invited error doctrine" to dispose of this type of issue was firmly established at the time or that the state courts have since consistently applied the rule in the same context. *See State v. Lopez*, 593 P.2d 1003 (Idaho 1979) (holding that trial courts have a duty to instruct on lesser included offenses, even when not requested, and finding invited error only because counsel affirmatively opposed the trial court's invitation to give an instruction); *see also State v. Blake*, 985 P.2d 117 (Idaho 1999) ("counsel's concurrence did not invite the court to give the challenge instructions; the judge already made that decision."). And if the Idaho Supreme Court relied on an inadequate procedural bar to reject a fairly presented constitutional claim, then its decision to bar review of the claim a second time in a later collateral appeal would likely be irrelevant to the exhaustion issue. This is so because a petitioner is not required to revisit claims that have been exhausted on direct appeal, or to seek some other extraordinary avenue for relief. *See O'Sullivan v.*

**MEMORANDUM DECISION AND ORDER - 22**

*Boerckel*, 526 U.S. at 844 (citations omitted).

On the other hand, if Stuart did *not* frame a constitutional issue on direct appeal, and the issue that was presented arose solely under state law, then this Court would have no reason to question whether the Idaho Supreme Court had consistently applied the invited error doctrine. The focus would instead shift to the adequacy of the Idaho Supreme Court's decision during the proceedings on the subsequent motion for relief from judgment, where Stuart clearly asserted constitutional issues.

For these reasons, the Court chooses to defer its decision as to whether Claim 8 is procedurally defaulted until Respondent has filed an answer and the parties have briefed the merits of the claim.

Claim 9

Stuart asserts that the statutes defining first degree murder by torture are unconstitutionally vague because they do not "adequately define torture." (Dkt. 78, p. 31.) He never raised this claim in the Idaho Supreme Court, and because the time to do so has passed, the claim is procedurally defaulted.

Claim 10

In this claim, Stuart contends that his death sentence is disproportionate to the crime that he committed because the verdict was "returned on the basis of jury instructions which did not require any intent to kill or other *mens rea* regarding the victim." (Dkt. 78, p. 31.) Stuart raised a proportionality issue under the Eighth Amendment in the Idaho Supreme Court during the direct appeal, but it was based on the

**MEMORANDUM DECISION AND ORDER - 23**

nature of his crime and a comparison with similarly situated defendants without reference to the jury instructions defining intent. (State's Lodging B-1, pp. 75-81.) His attempt to transform this claim into an instructional issue is unavailing, and the claim is properly exhausted only to the extent that it is commensurate with the way it was framed in the Idaho Supreme Court.

Claim 11

For his next claim, Stuart challenges the heinous, atrocious, and cruel and propensity to commit murder aggravating circumstances as unconstitutionally vague and as not supported by sufficient evidence to prove the circumstances beyond a reasonable doubt. Stuart fairly presented and properly exhausted these same basic constitutional claims in the Idaho Supreme Court during the direct appeal. (State's Lodging B-1, pp. 60-71.) His focus on different facts in federal court does not fundamentally alter the nature of the legal claims that were presented. The sufficiency of the evidence issues would also qualify as *Beam* claims that were "implicitly" reviewed by the Idaho Supreme Court.

Claim 12

Stuart contends that he was sentenced to death based on illegally obtained evidence. (Dkt. 78, p. 42.) Though the precise nature of this claim is unclear, it appears to center on evidence obtained by (1) the Clearwater County Sheriff's Office's secret monitoring of Stuart's telephone calls with his attorney and (2) state agents who interviewed Stuart directly and used Kathy Miller as a conduit to seize incriminating evidence. Stuart asserts that the Idaho Supreme Court committed a constitutional error in

**MEMORANDUM DECISION AND ORDER - 24**

relying on the second source of information (interviews with Stuart and seized physical evidence) to justify exceptions to the exclusionary rule stemming from a constitutional violation related to the first source of information (monitoring of telephone calls). According to Stuart, the State violated his constitutional rights in both instances.

As explained with respect to Claims 1 and 2C, Stuart has not fairly presented constitutional claims to the Idaho Supreme Court related to any pretrial interviews with law enforcement officers or to the State's alleged use of Kathy Miller as its agent to gather evidence. The claim is procedurally defaulted.

Claim 13

Stuart claims that "[t]he trial court's finding and the Idaho Supreme Court's affirming that the state proved that the evidence discovered through the illegal monitoring of Petitioner's attorney-client conversations were not subject to the exclusionary rule was not supported by the evidence, in violation of the Petitioner's Fourteenth Amendment right to due process and his Eighth Amendment right to a reliable sentence." (Dkt. 78, p. 45.)

Stuart raised a constitutional claim related to the monitoring of his attorney/client conversations under the Sixth and Fourteenth Amendments. That claim is properly exhausted and raised again in the Amended Petition, but to the extent Stuart is attempting to raise a separate claim based solely on the supposed insufficiency of the evidence to support the Idaho Supreme Court's finding that an exception to the exclusionary rule applied, he never raised a claim in that fashion in the state courts. Claim 13 was not

**MEMORANDUM DECISION AND ORDER - 25**

properly exhausted and is procedurally defaulted.

Claims 14, 15, 16, 17, 18, 19, 20, and 21

In these eight claims, Stuart focuses on the sentencing court's alleged errors when it considered the appropriate penalty and imposed a death sentence. These are *Beam*-type claims that were "implicitly" reviewed as part of the Idaho Supreme Court's automatic review responsibilities. They will not be dismissed as procedurally defaulted.

Claim 22

Stuart alleges that he was deprived of his constitutional right to a speedy trial. This claim is properly exhausted under the Sixth Amendment but not under a due process theory based on an alleged deprivation of a state-created liberty interest under Idaho's statute governing speedy trials.

Claim 23

Stuart next contends that his right to due process to meaningful appellate review was violated based on the failure to record and transcribe certain parts of the proceedings in state trial court. This claim was never raised in the Idaho Supreme Court and is now procedurally defaulted.

Claim 24

Stuart raises several sub-issues related to the lack of jury participation during his capital sentencing proceeding.

Subclaim A

Here, he asserts that "Idaho's refusal to retroactively apply *Ring v. Arizona*

**MEMORANDUM DECISION AND ORDER - 26**

violates Petitioner's and prospective jurors' fundamental rights." (Dtk. 78, p. 60.) A

passing reference to equal protection and due process was made in the joint opening and

reply briefs in the 2010 *Ring* retroactivity appeal, but the reference was in the context of a

different issue. (State's Lodging N-2, pp. 22; State's Lodging N-3, p. 13.) This claim was

then squarely presented in the brief supporting the petition for rehearing, filed after the

Idaho Supreme Court issued its opinion, in which the joint petitioners claimed that

"applying *Teague* [*v. Lane*, 489 U.S. 288 (1989] to deny retroactive application of *Ring*

violates Petitioners' and prospective jurors federal and state constitutional equal

protection and due process rights." (State's Lodging N-9, p. 3.) The petition was denied

without comment. (State's Lodging N-10.)

Respondent asserts that this was an improper way in which to raise a claim in the

Idaho Supreme Court, but he has not explained what other procedural avenue would be

open to a litigant who wishes to claim that the Idaho Supreme Court has itself erred

during the appellate process. Given the nature of the claim, which appears to challenge

the Idaho Supreme Court's application of the *Teague* retroactivity doctrine for the first

time to dispose of *Ring* issues, the Court finds that it was fairly presented in the only

manner that was available to Stuart. If Idaho has no corrective process in which to raise

such a claim, then the exhaustion requirement would be excused. 28 U.S.C.

§ 2254(b)(1)(B).

Subclaim B

Stuart contends that because "Idaho constitutional and statutory law uniformly

**MEMORANDUM DECISION AND ORDER - 27**

mandates that a jury must decide whether sentencing factors exist," his rights to "equal protection and due process as guaranteed by the Fourteenth Amendment . . . as well as his Eighth Amendment right to a reliable sentence" were violated because a judge sentenced him to death. (Dkt. 78, p. 63.) This claim was never raised in the Idaho Supreme Court, and because it is a broad-based attack on Idaho's death penalty scheme as it existed at the time that Stuart was sentenced to death, it is not saved by *Beam*.

### Subclaim C

Stuart claims that his death sentence is "constitutionally infirm because once [he] was determined eligible for a death sentence, a jury did not find facts necessary to its imposition." (Dkt. 78, p. 64.) This appears to be a straightforward argument that his Sixth Amendment right to a jury trial was violated because a judge instead of a jury found the aggravating circumstances to support the death sentence. Stuart raised this issue in his direct appeal, and it is properly exhausted. (State's Lodging B-1, pp. 81-83.)

### Subclaim D

In the final sub-part, Stuart asserts that the rights of prospective jurors were violated for all the same reasons that his were. (Dkt. 78, p. 65.) The only time that Stuart mentioned the rights of jurors in state court was in his petition for rehearing during the 2010 *Ring* appeal, and here he does not place the issue within the confines of applying the *Teague* doctrine. Accordingly, this subclaim has not been properly exhausted and is procedurally defaulted.

**MEMORANDUM DECISION AND ORDER - 28**

Claim 25

Stuart contends that the Idaho Supreme Court's application of the invited error doctrine to find that he waived an argument that the trial court erred in failing to give a lesser included offense instruction violated his right to due process under the Fourteenth Amendment. While the perceived inadequacy of the invited error doctrine may support an argument for excusing a procedural default of the lesser included offense issue, Claim 8, Stuart did not raise this as a stand-alone constitutional claim in the Idaho Supreme Court, and the time to do so has long since passed. Claim 25 is procedurally defaulted.

Claim 26

Stuart contends that the dismissal of his first post-conviction petition without an evidentiary hearing violated his rights under state law, which in turn deprived him of a state-created liberty interest without due process of law under the Fourteenth Amendment. Although Stuart challenged the summary dismissal of his post-conviction petition (State's Lodging D-1, pp. 14-29), he did so only on state law grounds. He has not exhausted a due process claim, and it is now procedurally defaulted.

Claim 27

In Claim 27, Stuart alleges that he was deprived of his constitutional right to the effective assistance of counsel on several grounds. He raised ineffective assistance of counsel claims for the first time in his 2002 successive post-conviction petition, which the district court dismissed as untimely under Idaho Code § 19-2719(3) and (5).

On appeal, the Idaho Supreme Court affirmed on the ground that Stuart had failed

**MEMORANDUM DECISION AND ORDER - 29**

to comply with a "heightened pleading requirement" for successive post-conviction petitions. *Stuart*, 232 P.3d at 818-20, 825-26. Citing earlier case law, the court stated, "'[a] petitioner bringing a successive petition for post-conviction relief has a heightened burden and must make a prima facie showing that issue raised in that petition fit within the narrow exception provided by the statute." *Id*. at 819 (quoting *Pizzuto v. State*, 903 P.2d 58, 60 (Idaho 1995)(citing *Paz*, 852 P.2d at 1357). The court concluded that "Stuart's claims for post-conviction relief are barred because of his failure to plead facts showing that he did not know and could not reasonably have known earlier of those claims."*Id*. at 826.

The court also turned aside Stuart's various constitutional challenges to Idaho Code § 19-2719, including his argument that it should not apply because he was sentenced before it was enacted. *Id*. at 820-26. The court instead found that the statute operated prospectively from the date of its enactment in cases such as Stuart's, meaning that the 42-day limitations period in Idaho Code § 19-2719(3) began to run as to Stuart's post-conviction claims in 1984. *See id*. at 821 (holding that the statute of limitations "began at the date of enactment for those cases involving convictions occurring at an earlier date").

Relying on the Idaho Supreme Court's opinion, Respondent argues that Stuart has defaulted all of his claims of ineffective assistance of counsel.

**MEMORANDUM DECISION AND ORDER - 30**

1.      ***Stuart Fairly Presented His Claims in the Manner That Was Available to Him***

Initially, Respondent asserts that Stuart "did not challenge the dismissal of his claims based upon the merits, but elected to challenge the applicability and constitutionality of [Idaho Code § 19-2719], [and] his ineffective assistance of counsel claims are procedurally defaulted." (Dkt. 92-1, p. 41.) Respondent contends that Stuart simply failed to brief the merits of the constitutional issues before the Idaho Supreme Court, and, as a consequence, they were not fairly presented to the highest state court.

The Court is not persuaded by this argument. While it is no doubt true that Stuart's appellate briefing focused on the applicability of Idaho Code § 19-2719 to his successive petition rather setting out the merits of his underlying claims, the ruling from which Stuart was appealing was a procedural one. Stuart was not seeking an opinion from the Idaho Supreme Court as to the constitutionality of the statute as an abstract matter; he was instead asking for a decision from the appellate court that would find the procedural bar inapplicable and remand the case to the state district court, which would then be required to take up the merits of the constitutional claims in the first instance. Respondent has not explained how, under customary Idaho appellate practice, the Idaho Supreme Court might have reached the merits of these claims without first reversing the district court's procedural ruling and remanding for further consideration.

In addition, a review of the Idaho Supreme Court's opinion reveals that it was aware of the nature of the federal claims that were put before it in the post-conviction

**MEMORANDUM DECISION AND ORDER - 31**

action, which included "an ineffective assistance of counsel claim based on the representation provided by the attorney who represented Stuart at trial, on direct appeal and in connection with his first two post-conviction petitions." *Stuart*, 232 P.3d at 817-18.

### 2. *Idaho Code § 19-2719, as Applied to These Claims, is not Adequate to Bar Federal Review*

Respondent next argues that the Idaho Supreme Court's invocation of the "heightened pleading requirement" in Idaho Code § 19-2719 for successive petitions is an independent and adequate procedural bar that prevents federal review of the ineffective assistance of counsel claims. Stuart counters that the rule is not adequate to bar consideration of his claims. The Court agrees.

To be adequate, a state rule must be "clear, consistently applied, and well-established." *Wells v. Maass*, 28 F.3d 1005, 1010 (1994). Novel procedural rules do not bar federal review because petitioners are not put on sufficient notice that they must comply. *Ford v. Georgia*, 498 U.S. 411, 423-25 (1991); *NAACP v. Alabama*, 357 U.S. 449, 354-358 (1958). In this vein, "state procedural rules with overly vague standards do not provide petitioners with sufficient notice of how they may avoid violating the rule. Furthermore, poorly defined procedural rules do not provide courts the guidance required for consistent application." *King v. LaMarque*, 464 F.3d 963, 965-66 (9th Cir. 2006). Likewise, the "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002). A clear procedural rule will not be inadequate, however, merely because the state

**MEMORANDUM DECISION AND ORDER - 32**

courts exercise the discretion to apply the rule in some cases but not others. *Walker v. Martin*, 131 S.Ct. 1120, 1127-28 (2011) (quoting *Beard v. Kindler*, 130 S.Ct. 612, 617 (2009)).

The Idaho Supreme Court's reliance on the "heightened pleading requirement" as a means of establishing the limited exception to waiver for previously unknown claims in Idaho Code § 19-2719(5) suffers from two infirmities. First, it was neither clear nor well-established at the time of Stuart's default that it was even possible for a death-sentenced prisoner to allege facts that might excuse his failure to raise claims of ineffective assistance of *trial* counsel within 42 days of judgment (or, here, within 42 days of the enactment of the statute). Except for one minor variation, in over 25 years the Idaho Supreme Court had consistently found such claims to be "known" within 42 days and waived if not pled in that time period. Second, the Idaho Supreme Court's default of the claims in this case implicates the same core fairness concerns that excused a similar default in *Hoffman v. Arave*, 236 F.3d 523 (9th Cir. 2001).

As to the first point, the Idaho Supreme Court's decision implies that a petitioner may be able to plead sufficient facts that would excuse his failure to raise allegations of ineffective assistance of trial counsel within the 42-day statute of limitations. This is a significant departure from past practice. The Idaho Supreme Court has long held that ineffective assistance of trial counsel is a claim that "should be reasonably known immediately upon the completion of the trial and can be raised in a post-conviction proceeding." *State v. Rhoades*, 820 P.2d 665, 677 (Idaho 1991). It has remained steadfast

**MEMORANDUM DECISION AND ORDER - 33**

even in the face of an argument that such claims are impossible to assert when the same attorney represents the defendant at trial and then again in the post-conviction action; brushing aside those concerns, it has stated that such claims are knowable even "where the petitioner was represented by the same attorney at trial, on direct appeal, and in the first post-conviction proceeding." *See, e.g., McKinney v. State*, 992 P.2d 144, 150 (Idaho 1999). It has departed from this line of case law only when a petitioner's prior counsel failed to assert any post-conviction claims whatsoever. *See Dunlap v. State*, 961 P.2d 1179, 1180 (Idaho 1998).

Given this fixed landscape, the Court agrees with Stuart that he was not reasonably on notice that the Idaho Supreme Court might change course and find that his claims of ineffective assistance of trial counsel could have fit within Idaho Code § 19-2719(5)'s exception, but only if he had pled specific facts to alert the state courts that the claims were not knowable within 42 days. The Idaho Supreme Court effectively moved the goal posts on Stuart, penalizing him for accepting its case law and focusing his attack on the constitutionality of Idaho Code § 19-2719 rather than attempting to show that he could fit within the exception for unknown claims.

What's more, post-*Stuart* it is still a bit of a mystery as to the type of factual allegations that might make out a prima facie case to satisfy the exception. The Idaho Supreme Court was aware that Stuart had been represented by the same attorney for 14 years – spanning the criminal trial, appeal, and first two post-conviction proceedings – and yet that was not enough to convince a majority of the court that he had alleged

MEMORANDUM DECISION AND ORDER - 34

sufficient facts to show that his claims were not reasonably knowable before the limitations period expired. If there are no facts that would satisfy the heightened pleading requirement for this type of claim, then the exception would be illusory.[4]

Even if the Idaho Supreme Court relied on a firmly established and regularly followed state procedural bar, the Court finds that the default of Claim 27 is also excused under *Hoffman v. Arave*, 236 F.3d 523 (9th Cir. 2001).

In *Hoffman*, the petitioner was represented by the same attorneys during his trial, his initial state post-conviction matter, and during the consolidated appeal from those proceedings. *Id*. at 528, 532-33. The Ninth Circuit held that because counsel could not have been expected to argue their own ineffectiveness at the time that they were required to do so, strict enforcement of Idaho Code § 19-2719 frustrated the petitioner's right to raise that particular constitutional claim in state court in the time frame required by the statute. *Id*. at 534-36. In reaching that conclusion, the Court remarked that "Idaho's forty-two day filing deadline, as applied to Hoffman, is uniquely harsh." *Id*. at 534. Because "§ 19-2719 effectively prevented Hoffman from timely raising his ineffective assistance

---

[4] The Court notes that Idaho Supreme Court has recognized that claims of ineffective assistance of *appellate* counsel are not knowable within 42 days of judgment because the direct appeal has not yet begun before the deadline expires. *See Paz v. State*, 852 P.2d 1355, 1357 (Idaho 1993). As a result, the Idaho Supreme Court has generally required that claims of ineffective assistance of appellate counsel be raised within a reasonable time of when they could have been discovered, which is tied to the date on which the opening brief on appeal was filed. This could implicate a slightly different analysis with respect to the application of a "heightened" pleading requirement to bar those particular claims.

But because of the interconnected manner in which Stuart has asserted his allegations in Claim 27, it is difficult to disentangle those claims alleging ineffectiveness at trial from those claims alleging ineffectiveness on appeal. In any event, as discussed below, the default of all claims would be excused under the *Hoffman* rationale.

**MEMORANDUM DECISION AND ORDER - 35**

of counsel claims," he was allowed to go forward with those claims in federal court. *Id*. at 536.

The fairness concerns that animated *Hoffman* also exist here. Stuart had the same attorney, Robert Kinney, at trial, on direct appeal, and again in post-conviction matters until 1995. As in *Hoffman*, Kinney failed to raise his own ineffectiveness on Stuart's behalf when he would have been required to do so to avoid a presumed waiver under Idaho Code § 19-2719(3) and (5), and Stuart's right to seek review of this fundamental constitutional right was frustrated by the harsh application of the statute. This is also true of Stuart's claims of ineffective assistance of appellate counsel because Kinney continued to represented Stuart beyond the "reasonable time" that those claims must have been raised to be timely. *See Paz v. State*, 852 P.2d 1355, 1357 (Idaho 1993) (marking the beginning of the statute of limitations for these claims as the filing of the opening brief on appeal).

In reaching this latter conclusion, the Court is not persuaded by Respondent's assertion that *Leavitt v. Arave*, 371 F. 3d 663 (9th Cir. 2004), determined conclusively that the *Hoffman* rule can never excuse the default of claims of ineffective assistance of appellate counsel. It is true that the Ninth Circuit noted that "*Hoffman* has nothing to say" about the default of such claims in *Leavitt* because "we have not been directed to any case that construes 'reasonable time' in an overly restrictive manner." *Id*. at 693. But the Ninth Circuit was focused on whether the time frame for raising this type of claim was itself unduly restrictive, and apparently did not consider whether the reasoning in *Hoffman*

**MEMORANDUM DECISION AND ORDER - 36**

would logically apply when an otherwise "reasonable time" expired while the same attorney continued to represent the petitioner in post-conviction matters for many years.

In an apparent effort to avoid *Hoffman*, Respondent separates the heightened pleading requirement from the timeliness and waiver provisions in Idaho Code § 19-2719. He suggests that, unlike *Hoffman*, the Idaho Supreme Court never reached the question of whether Stuart's claims were timely or waived:

> [I]t was Stuart's failure to comply with the heightened pleading requirement that prevented the court from determining whether his claims fit within the exception of I.C. § 19-2719, particularly in light of the Ninth Circuit's decision in *Hoffman*, and his request that the supreme court reconsider its prior holding. If Stuart had complied with the "heightened pleading requirement" of I.C. § 19-2719, the court could have determined whether his claims were timely.

(Dkt. 118, p. 9.)

In the Court's view, this is a distinction without a meaningful difference. The heightened pleading requirement does not exist for its own sake; it is the only means by which a petitioner can prove the limited exception to the automatic waiver rule for claims that were not raised within the statutory deadline in Idaho Code § 19-2719(3). In other words, the statute operates in such a way as to raise a presumption that any claim not asserted "within the time limits specified" in Idaho Code § 19-2719(3) is untimely and therefore waived, subject only to the petitioner taking on a heightened burden to rebut that presumption by pleading specific facts to show that he could not have known of the claim by the deadline. Idaho Code § 19-2719(5). As applied to this case, then, the Idaho Supreme Court *necessarily* decided that the new claims were untimely and waived by

**MEMORANDUM DECISION AND ORDER - 37**

operation of the statute *because* Stuart had not carried his burden to plead facts showing that the exception for unknown claims applied. And because the limitations period that resulted in the time bar and waiver expired when Robert Kinney was still representing Stuart – either within 42 days of the statute's enactment in 1984 for trial counsel claims or within a "reasonable time" of the opening brief on appeal for appellate counsel claims – *Hoffman* is on point.

As a rear-guard effort, Respondent turns to Justice Kidwell's concurring opinion. (Dkt. 92-1, p. 42; Dkt. 118, p. 12.) Apparently persuaded by the logic of *Hoffman*, Justice Kidwell concluded that "ineffective assistance of counsel claims raised by petitioners represented by the same counsel at trial and during initial post-conviction proceedings cannot be 'reasonably known' under I.C. § 19–2719(5)." 232 P.3d at 826 (Kidwell, J. Pro Tem, concurring). He instead believed that the limitations period for those claims should be tolled until new counsel is appointed. *Id*. In his view, Stuart had a reasonable time in which to present his claims after the appointment of new counsel in 1995, and a delay of seven years was not reasonable. *Id*. at 826-27.

Respondent argues that the concurring opinion tends show that Stuart's claims would still be barred under state law because he did not raise them within a reasonable time after the appointment of a new attorney in state district court. (Dkt. 92-1, p. 42.) This was not the majority opinion's rationale, and Justice Kidwell's sensible approach did not command even a single additional vote. *See Stuart*, 232 P.3d at 825 ("[w]e do not adopt the broad rule pronounced in *Hoffman* in this case."). The majority's reluctance to follow

Justice Kidwell's lead on this point is perplexing considering that since the mid-1990s new attorneys are routinely appointed to represent death-sentenced defendants in Idaho post-conviction matters, and the practical effect of re-visiting its pre-*Hoffman* decisions to find that a petitioner cannot reasonably know of these particular claims until new counsel has been appointed would have been negligible. In fact, this Court is unaware of any case other than Stuart's that has not yet worked its way once through state and federal post-conviction proceedings that still presents a potential *Hoffman* problem. A state procedural bar is "independent and adequate only if the last state court to which the petitioner presented the claim 'actually relied' on a state rule that was sufficient to justify the decision." *Carter v. Gurbino*, 385 F.3d 1194, 1197 (9th Cir. 2004). This Court is not free to shift from the procedural bar that the state court actually invoked to one that may be more appropriate.

For these reasons, the Court concludes that Respondent has failed to carry his burden to establish that the state court's reliance on Idaho Code § 19-2719 is adequate to prevent review of Claim 27.

<u>Claim 28</u>

Stuart alleges that cumulative error deprived him of a fair trial and a reliable sentencing hearing. He has never raised a cumulative error issue in the Idaho Supreme Court, and this claim is procedurally defaulted.

<u>Claim 29</u>

For his final claim in the Amended Petition, Stuart asserts that the length of time

**MEMORANDUM DECISION AND ORDER - 39**

that he has been under a death sentence, and the conditions under which he has served his time in prison, violate the Eighth Amendment's prohibition on cruel and unusual punishment. To the extent that Stuart is challenging his conditions of confinement, such a claim is more appropriately brought in a civil rights lawsuit under 42 U.S.C. § 1983.

While Stuart raised constitutional claims based on the length of confinement under a death sentence in the state trial court in his successive post-conviction petition, he chose not to re-assert the claim in the Idaho Supreme Court. As a result, that aspect of the claim is procedurally defaulted.

## CONCLUSION

The Court finds that the following claims were properly exhausted or that any default has been excused: 2A (as limited), 5, 6, 7 (limited), 8 (reserved ruling), 10, 11, 13 (limited), 14-21, 22 (limited), 24A, 24C, and 27. Stuart may proceed with these claims. Conversely, the Court finds that the following claims are procedurally defaulted: 1, 2B, 2C, 2D, 2E, 3, 4, 9, 12, 23, 24B, 24D, 25, 26, 28, and 29.

A habeas petitioner has an opportunity to excuse a procedural default if he can establish valid cause for the default and actual prejudice as a result of the constitutional error. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show cause, the petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Id.* at 488. To show prejudice, the petitioner bears the burden of demonstrating that the errors "worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of

**MEMORANDUM DECISION AND ORDER - 40**

constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Stuart contends that the ineffectiveness of his counsel in state court is the cause for the default of many of the underlying claims in his Amended Petition. (Dkt. 105, p. 29.) Because this Court has determined that Stuart's substantive claims of ineffective assistance of counsel will not be dismissed as procedurally defaulted, it is possible that they could either serve as an independent basis for relief or as cause to excuse the default of certain other claims. For that reason, it would be premature to dismiss the defaulted claims, and the Court will not enter an order of dismissal until such time as Stuart's allegations of ineffective assistance of counsel can be resolved.

The Court's decision regarding all other procedural default matters with respect to these claims is final.[5]

## ORDER

**IT IS ORDERED:**

1.     Respondent's Motion to Dismiss Procedurally Defaulted Claims (Dkt. 92)
       is CONDITIONALLY GRANTED in part and DENIED in part, as set forth
       above.

2.     The following claims are procedurally defaulted: 1, 2B, 2C, 2D, 2E, 3, 4, 9,

---

[5] The Court recently vacated its order setting a supplemental briefing schedule on whether ineffective assistance of *post-conviction* counsel should serve as a cause to excuse any defaulted substantive claims of ineffective assistance of counsel (here, Claim 27) under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). (Dkt. 125.) The Court indicated that it would reset the briefing schedule, if necessary, after it addressed the procedural default status of the claims at issue in Respondent's Motion. (*Id.*) Because the Court has concluded that Claim 27 will be reviewed, there is no need for additional briefing on *Martinez* issues.

**MEMORANDUM DECISION AND ORDER - 41**

12, 23, 24B, 24D, 25, 26, 28, and 29. The Court reserves its ruling whether these claims will be dismissed with prejudice on that basis until later in this proceeding.

3.      The following claims will not be dismissed as procedurally defaulted: 2A (as limited herein), 5, 6, 7 (limited), 8 (deferred ruling), 10, 11, 13 (limited), 14-21, 22 (limited), 24A, 24C, and 27.

4.      No later than 21 days from the date of this Order, the parties shall confer on a proposed scheduling order for additional filings in this case and shall submit a joint proposed scheduling order to the Court, or shall submit proposed litigation plans separately if the parties cannot agree. The Court intends to consolidate additional briefing in this case into as few steps as possible under the circumstances while still maintaining efficiency. It will likely follow the same course that it followed in *Hairston v. Paskett*, 1:00-cv-00303-BLW, (Dkt. 131, pp. 6-7), requiring: (1) an Answer from Respondent; (2) Petitioner's brief on the merits of non-defaulted claims, which also contains argument as to why new evidentiary development is needed on selected claims (such as discovery or an evidentiary hearing), or a motion for new evidentiary development on selected claims filed separately but simultaneously with a brief on the merits; and (3) Respondent's responses to Petitioner's filings. In fashioning a proposed scheduling order, counsel should strive to work within this general

**MEMORANDUM DECISION AND ORDER - 42**

framework in mind, or indicate why departing from it would be more

efficient. To avoid repeated requests for extensions of time, the Court will

consider allowing longer deadlines between filings, within reason, than it

might otherwise consider under a more piecemeal approach.



DATED:  **September 5, 2012**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 43**